IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAJANAE ANDERSON, on behalf of herself and others similarly situated, | : : : | 2:20-cv-03014-RAL |
| v. | : : | |
| LIBERTY HEALTHCARE CORPORATION and SARGENT'S PERSONNEL AGENCY, INC. | : : : | |

| | | |
|---|---|---|
| CRISTINE WILLIAMS, on behalf of herself and others similarly situated, | : : : | 2:21-cv-00691-RAL |
| Plaintiff, | : : | |
| v. | : : | |
| LIBERTY HEALTHCARE CORPORATION and ADVANCE SOURCING CONCEPTS LLC | : : : : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT**


Date:  September 30, 2021

Peter Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
Michelle L. Tolodziecki
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

*For Plaintiffs*

## <u>TABLE OF CONTENTS</u>

A.  BACKGROUND  (p. 1)

    1.  The Common Facts and Legal Claim.  (p. 1)

    2.  Conditional Certification, Discovery, and Settlement Negotiations.  (p. 2)

    3.  Settlement Terms.  (p. 3)

    4.  Details Regarding the Payments to Plaintiffs.  (p. 4)

    5.  Litigation Risks.  (p. 6)

B.  ARGUMENT  (p. 7)

    1.  "Final Certification" of the FLSA Collective is Warranted.  (p. 7)

    2.  Approval of the Settlement is Warranted.  (p. 8)

        a.  The settlement resolves a *bona fide* FLSA dispute.  (p. 9)

        b.  The Settlement "Furthers the FLSA's Implementation."  (p. 9)

        c.  The Settlement is "Fair and Reasonable"  (p. 10)

        d.  Approval of the Service Awards is Warranted.  (p. 12)

        e.  Approval of the Attorney's Fees/Expenses is Warranted. (p. 13)

C.  CONCLUSION  (p. 16)

Originating Plaintiffs Tajanae Anderson ("Anderson") and Cristine Williams ("Williams") and the 48 other employees who opted-in to the FLSA collective (together "Plaintiffs") and Defendants Liberty Healthcare Corp. ("Liberty"), Sargent's Personnel Agency, Inc. ("Sargent's"), and Advance Sourcing Concepts LLC ("Advance") (together "Defendants") have settled these related Fair Labor Standards Act ("FLSA") lawsuits per the accompanying Collective Action Settlement Agreement ("Agreement"). The settlement requires Defendants to pay $585,000 plus employer-side taxes associated with the settlement payments. Although the Third Circuit has not specifically addressed the issue, this Court regularly holds that FLSA collective settlements must be judicially reviewed for fairness. *See* pp. 8-9 *infra*. As discussed below, judicial approval is warranted in this case:

## A. BACKGROUND

### 1. The Common Facts and Legal Claim.

This overtime rights lawsuit has been litigated on behalf of 50 Plaintiffs who provided "adult protective services" pursuant to a contract between Liberty and the Pennsylvania Department of Human Services. Every Plaintiffs, regardless of his/her work location, worked pursuant to a common job description for the job title of "Case Worker/Investigator – Adult Protective Services." *See* Exhibit A. We'll call this the "APS Investigator" position.

Liberty paid some of its APS Investigators through Sargent's and Advance, both of which are third-party staffing agencies. The 41 Plaintiffs paid by Liberty or Sargent's are covered by the *Anderson* action, which covers the period between June 22, 2017 and June 19, 2021. Meanwhile, the 9 Plaintiffs paid by Advance are covered by the *Williams* action, which covers

the period between February 15, 2018 and June 19, 2021.[1]  We refer to these periods together as

the "Relevant Period."

During the Relevant Period, Defendants paid Plaintiffs on a salary basis and uniformly

classified the APS Investigator position as "exempt" from federal and state overtime laws.  Thus,

when Plaintiffs worked over 40 hours per week, they generally received no compensation

beyond their base salaries.

In this litigation, Plaintiffs allege that that Defendants' treatment of the APS Investigator

position as overtime-exempt was incorrect under the FLSA and the Pennsylvania Minimum

Wage Act ("PMWA").  Thus, Plaintiffs claim they are owed overtime pay calculated at "one and

one-half times" their "regular rate" throughout the Relevant Period.  *See* 29 U.S.C. § 207(a)(1);

43 P.S. § 333.104(c).

### 2.   Conditional Certification, Discovery, and Settlement Negotiations.

Mindful of the "lenient standard" applicable to FLSA "conditional certification" motions,

*see Mitchell v. Covance, Inc.*, 438 F. Supp. 3d 341, 346 (E.D. Pa. 2020), the parties prepared and

the Court approved stipulations "conditionally certifying" putative FLSA collectives covering

the Relevant Period.  *See Anderson* at Doc. 21, ¶ 3; *Williams* at Doc. 16, ¶ 3.  In exchange,

Anderson and Williams agreed that their PMWA claims would not be pursued on a class

action basis under Federal Rule of Civil Procedure 23.  *See Anderson* at Doc. 21, ¶ 5; *Williams* at

Doc. 16, ¶ 5.  However, anyone joining the collective retained the right to assert the PMWA

---

[1]  The June 19, 2021 end date coincides with the date on which Defendants started to pay
overtime to APS Investigators.  Meanwhile, the June 22, 2017 and February 15, 2018 start dates
fall three years prior to the filing of the respective *Anderson* and *Williams* complaints due to the
Pennsylvania Minimum Wage Act's three-year limitations period.  *See Cerutti v. Frito Lay, Inc.*,
777 F. Supp. 2d 920, 925 n. 4 (W.D. Pa. 2011).  This three-year period is more generous that the
two-year period available under the FLSA in the absence of a "willful violation."  *See Stone v.
Troy Construction, LLC*, 935 F.3d 141, 148-50 (3d Cir. 2019).

claim[2] with a limitations period tolled by the commencement of the action,[3] *see id.*

In the wake of conditional certification, notice ensued and litigation proceeded on behalf of the current/former APS Investigators joined the litigation.[4]  The parties then completed substantial written discovery, which included Defendants' responses to written interrogatories and the production of over 5,000 pages of documents.

On August 12, 2021, the Court presided over a "Zoom" settlement conference.  In advance of the conference, Plaintiff's counsel interviewed 37 of the 50 Plaintiffs regarding their job duties, responsibilities, and work hours.  Plaintiffs' counsel also analyzed every Plaintiff's timekeeping and payroll data and provided defense counsel and the Court with a damages model demonstrating the alleged unpaid overtime wages available under various scenarios.

Settlement was reached at the August 12, 2021 conference.

### 3.  Settlement Terms.

Under the settlement, Defendant will pay a total of $585,000 plus any employer-side taxes associated with the settlement payments.  *See* Agreement at ¶ 2.  If the Court approves the requested $169,000 in attorney's fees/expenses and separate $5,000 service awards for Anderson and Williams, then $406,000 will be shared by the 50 Plaintiffs.  *See id.* at ¶¶ 2, 5-6 and Ex. A.

---

[2]   This provision of the stipulation is consistent with the notion that individuals who opt-in to an FLSA collective action join "the action as a whole."  *Prickett v. Dekalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003); *see also Woodward v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 190 n. 10 (M.D. Pa. 2008) ("any employees who opt in may likewise assert an MWA claim"); *Jackson v. City of San Antonio*, 220 F.R.D. 55, 60 n.40 (W.D. Tex. 2003) ("an opt-in plaintiff to the federal [FLSA] claim, opts in to the action as a whole, including both the federal and state claims").

[3]   Because workers do not toll the running of the FLSA's limitations period until they "opt-in" to the action, *see Stone*, 935 F.3d at 152 (citing 29 U.S.C. § 256), this tolling agreement ensured that opt-ins preserved *American Pipe* tolling of the PMWA claim notwithstanding the withdrawal of the Rule 23 class allegations.

[4]   Only a few of the 50 Plaintiffs opted-in to the actions before notice was issued.

If the Court disapproves any portion of the requested fees/expenses or service awards, then the $406,000 will be increased by the disapproved monies. *See id.* at ¶ 1 (defining "Payout Amount").

In exchange for the settlement payments, Plaintiffs are bound by the following release language:

> Upon passage of the Approval Date and Defendants' fulfillment of all payment obligations arising under this Agreement, each Plaintiff (on behalf of himself/herself and his/her heirs, spouses, executors, assigns, and representatives) who signs a Release Form releases and forever discharges the Released Parties from all legal or equitable claims (including, but not limited to, claims for the reimbursement of liquidated damages, interest, penalties, attorney's fees and litigation costs and expenses) arising prior to the Approval Date and either asserted in or reasonably related to the Actions, including all such claims for unpaid regular or overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, *et seq.*, or any other federal, state, or local statute, regulation, rule, or common law theory.

Agreement at ¶ 4. Virtually identical release language appears in a "Release of Claims" form ("Release Form") that each Plaintiff must sign to receive his/her settlement payment. *See id.* at Ex. B. Each Release Form is individually addressed to each Plaintiff and specifies the amount of his/her anticipated settlement payment. *See id.* The Release Forms also explain that any settlement payment is contingent upon the Court's approval of the settlement. *See id.*

### 4. Details Regarding the Payments to Plaintiffs.

The settlement distributes payments to the 50 Plaintiffs based on the number of weeks they worked as APS Investigators during the Relevant Period. As previously explained, this is the maximum time period for which Plaintiffs can recover under federal or state law. *See* Notes 1 and 3 *supra*.

After backing-out the $10,000 in proposed service awards, the ***average gross payout per Plaintiff*** stands at **<u>$11,500</u>** ($575,000 *divided by* 50 Plaintiffs). Moreover, because Plaintiffs

worked a combined total of 4,585 weeks during the Relevant Period, the **average gross payout per week** stands at approximately **<u>$125</u>** ($575,000 *divided by* 4,585 weeks).[5]

The FLSA enables an overtime-eligible, salaried employee to recover under the "half-time" method (a.k.a. "fluctuating workweek" method) adopted by the Supreme Court in *Overnight Transportation Co. v. Missel*, 316 U.S. 572 (1942), and utilized by most federal courts in awarding overtime pay to misclassified salaried employees. *See generally DePalma v. The Scotts Company, LLC*, 2019 WL 97036, 2019 U.S. Dist. LEXIS 97036, *23-30 (D.N.J. June 10, 2019). Under *Missel*'s "half-time" methodology, a Plaintiff would need to work over 16 overtime hours per week in order to earn the $125/week payout delivered by the settlement.[6]

---

[5]  These gross recovery figures include attorney's fees consistent with this Court's observation that, in evaluating a settlement's fairness, "the relevant settlement amount is the total amount of the settlement even though the total settlement amount includes attorney's fees." *Solkoff v. Pennsylvania State University*, 435 F. Supp. 3d 646, 655 (E.D. Pa. 2020).

[6]  Under the half-time methodology, APS Investigators' average annual salary of approximately $44,000 equates to a weekly salary of around $846 ($44,000 *divided by* 52 weeks). Thus, if a Plaintiff worked 56 hours in a week, her "regular rate" would amount to $15.10/hour ($846 *divided by* 56 hours), her "half-time" rate would amount to $7.55 ($15.38 *divided by* 2), and 16 overtime hours would generate overtime premium pay of $120.80 ($7.55 *multiplied by* 16 hours). This demonstrates that an excellent payout the $125/week represents under the FLSA.

*Missel*'s half-time methodology does not apply to the PMWA overtime claim in the wake of the Pennsylvania Supreme Court's recent opinion in *Chevalier v. General Nutrition Centers, Inc.*, 220 A.2d 1038 (Pa. 2019), which held that salaried, overtime-eligible employees are entitled to overtime pay equaling 150% of their regular rate. However, as this Court has observed: "When, as here, the gross amount of the settlement is not apportioned among the various FLSA and non-FLSA claims, the Court will consider whether the gross amount satisfies the FLSA claim only. This is so because the Court is required to approve only the part of the settlement agreement that implicates the FLSA claims." *Solkoff*, 435 F. Supp. 3d at 655. Thus, the Court need not evaluate the settlement based on PMWA principles. Moreover, even if the Court did undertake such an evaluation, the settlement's $125/week payout equates to over 4 hours of overtime pay per week based on the following math: [$846 *divided by* 44 hours] X [1.5] X [4 overtime hours] = $115.36.

Finally, the above analysis assumes that every Plaintiff worked overtime during *every* week. This, of course, is not realistic due to vacation days, holidays, and sick days. The $125/week settlement payout would increase if the analysis excluded weeks during which no overtime could have been worked due to vacation days, holidays, and sick days.

5. **Litigation Risks.**

Defendant is represented by skilled defense lawyers who, absent settlement, were prepared to raise defenses that might have resulted in Plaintiffs losing this lawsuit or recovering less than the settlement amount.  These risks are described below:

**First**, absent settlement, Defendants might prove that APS Investigators were covered by the "professional exemption."  *See generally* 29 C.F.R. § 541.300, *et seq.*  As indicated by the common job description, the position carried significant responsibility, required Plaintiffs to exercise a great deal of discretion and judgment, required a college degree, and paid a $44,000 annual salary that exceeds the exemption's minimum requirement.  *See id.* at §541.300(a)(1). While Plaintiffs' counsel believe APS Investigators were overtime-eligible, they are sometimes wrong.  *See*, *e.g.*, *Itterly v. Family Dollar Stores, Inc.*, 606 Fed. Appx. 643 (3d Cir. 2015); *Galdo v. PPL Electric Utilities Corp.*, 2016 U.S. Dist. LEXIS 114545 (E.D. Pa. Aug. 26, 2016).

**Second**, while the settlement covers the period beginning three-years prior to Anderson's and Williams' filing of each complaint, Plaintiffs would need to establish a "willful" FLSA violation in order to benefit from a three-year (rather than a two-year) limitations period.  This would require Plaintiffs to demonstrate that Defendant "'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA.]'"  *Strong*, 935 F.3d at 150 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  Meeting this standard can be difficult where, as here, Defendants purportedly had no advance notice of a potential FLSA violation and harbored a good faith belief that they were complying with the FLSA.

**Third**, absent settlement, the parties would hotly dispute the amount of overtime work performed.  The APS Investigator position required Plaintiffs to spend considerable time

6

working outside of the office, and such work made up much of Plaintiffs' allegedly unpaid overtime.  Proving and quantifying such time can be difficult.  This is especially true where, as here, some Plaintiffs' contemporaneous "timesheet" entries report fewer overtime hours than the overtime hours alleged in this litigation.  In sum, proving hours worked is no easy task.  *See*, *e.g.*, *Rosano v. Township of Teaneck*, 754 F.3d 177, 188-90 (3d Cir. 2014) (affirming district court finding that employees failed to present sufficient evidence of unpaid overtime hours).

**Fourth**, absent settlement, Defendant would seek to depose many of the Plaintiffs.  In almost every FLSA collective action, some opt-in plaintiffs fail to sit for deposition (or otherwise fail to respond to "individualized" discovery) and, as a result, are dismissed from the action.  *See*, *e.g.*, *Claiborne v. Fedex Ground Package System, Inc.*, 2021 WL 3563388, 2021 U.S. Dist. LEXIS 151781, \*39 (W.D. Pa. Aug. 12, 2021) (dismissing opt-in plaintiffs for failing to answer written discovery requests).  Settlement enables Plaintiffs to avoid such attrition.

## B.  ARGUMENT

### 1.  "Final Certification" of the FLSA Collective is Warranted.

When, as here, an FLSA lawsuit is settled on behalf of "opt-in" plaintiffs who have joined a "conditionally certified" collective, judicial review of the settlement often includes a determination of whether final (a.k.a. "second-stage") certification of the collective is warranted. *See*, *e.g.*, *Galt v. Eagleville Hospital*, 310 F. Supp. 3d 483, 492-93 (E.D. Pa. 2018); *Altnor v. Preferred Freezer Services, Inc.*, 197 F. Supp. 3d 746 (E.D. Pa. 2016).  In this regard, courts "may consider 'whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment.'"  *Id.* (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536-37 (3d Cir. 2012)).

Here, consideration of the above criteria confirms the propriety of final certification. During the relevant period, all 50 Plaintiffs worked in Pennsylvania as APS Investigators pursuant to a standardized job description, were paid salaries, and were uniformly classified as overtime-exempt. *See* p. 2 *supra*. In this regard, Plaintiffs are bound together by a common set of core facts.

Moreover, all Plaintiffs share common legal theories. Specifically, Plaintiffs pursue the common claim that Defendants' corporate decision-makers erred when they classified the APS Investigator position as overtime-exempt. Defendants, on the other hand, would argue that the exemption decision was correct. As recently explained by Judge Pratter, final certification is warranted when opt-in plaintiffs seek to settle an FLSA lawsuit based on such common "misclassification" theories. *See Hall v. Accolade, Inc.*, 2020 WL 1477688, 2020 U.S. Dist. LEXIS 52632, *15-16 (E.D. Pa. Mar. 25, 2020).[7]

## 2. Approval of the Settlement is Warranted.

Although the Third Circuit has not addressed the issue, this Court generally reviews FLSA settlements to ensure "that the compromise reached is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Howard v. Philadelphia Housing Authority*, 197 F. Supp.3d 773, 777 (E.D. Pa. 2016) (internal quotations omitted); *accord Adams v. Bayview Asset Management, LLC*, 11 F. Supp. 3d 474, 476 (E.D. Pa. 2014); *Solkoff*, 435 F. Supp. 3d at 652;

---

[7] *See also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1262-63 (11th Cir. Dec. 16, 2008) (final certification of collective comprised of hundreds of retail store managers allegedly misclassified as overtime-exempt); *Goodman v. Burlington Coat Factory*, 2019 U.S. Dist. LEXIS 223588, *30-48 (D.N.J. Nov. 20, 2019); *Indegrit v. Rite Aid Corporation*, 293 F.R.D. 632, 640, 643-44 (S.D.N.Y. 2013) (same); *Nerland v. Caribou Coffee Company, Inc.*, 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007) (same).

*Altnor*, 197 F. Supp. 3d at 763; *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 522-23 (E.D. Pa. 2016); *Cuttic v. Crozier-Chester Medical Center*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012). This "fairness" analysis generally entails three separate inquiries:  (1) Does a *bona fide* FLSA dispute exist?  (2) Is the settlement "fair and reasonable"?  and (3) Does the settlement "further the FLSA's implementation in the workplace"?  *See*, *e.g.*, *Kraus*, 155 F. Supp. 3d at 530-33.  In addition, the Court should consider the reasonableness of the proposed attorney's fees, *see*, *e.g.*, *id.* at 533-34, and any proposed service awards, *see*, *e.g.*, *Altnor*, 197 F. Supp. 3d at 769-72.

As discussed below, the instant settlement warrants approval under the above criteria:

**a.  The settlement resolves a *bona fide* FLSA dispute.**

"[F]or a *bona fide* dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented."  *Kraus*, 155 F. Supp. 2d at 523 n. 3 (E.D. Pa. Jan. 11, 2016).  Such is the case here.  Defendants have retained skilled counsel, have filed answers denying liability, and have continued leveraged their merits arguments throughout the settlement proceedings.

**b.  The Settlement "Furthers the FLSA's Implementation."**

Generally speaking, settlements further the FLSA's implementation where "there are no overly burdensome confidentiality agreements, overbroad release language, or sealed filings." *VanOrden v. Lebanon Farms Disposal, Inc.*, 2019 U.S. Dist. LEXIS 181897, *4 (M.D. Pa. Oct. 18, 2019); *accord Solkoff*, 435 F. Supp. 3d at 658-60; *Howard*, 197 F. Supp.3d at 779-80; *Altnor*, 197 F. Supp. 3d at 764; *Kraus*, 155 F. Supp. 3d at 532-33; *Cuttic*, 868 F. Supp. 2d at 466-68.

Here, the settlement avoids the above pitfalls.  The release is strictly limited to legal claims "asserted in or reasonably related to the Actions."  Agreement at ¶ 4.  Moreover, the Agreement is publicly filed, and its confidentiality provision is narrowly tailored to merely

9

prevent Anderson, Williams, and Plaintiffs' counsel from publicizing the settlement to the news media.  *See* Agreement at ¶ 8.  As Judge Goldberg has explained, this type of limited confidentiality provision (which does not prevent employees from discussing the settlement with each other) does not frustrate the FLSA's purpose.  *See Ogunlana*, 2020 WL 1531846, 2020 U.S. Dist. LEXIS 55619, at *13-14; *accord McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, 2014 U.S. Dist. LEXIS 75840, *8-10 (E.D. Pa. June 4, 2014).

### c.   The Settlement is "Fair and Reasonable"

In the absence of Third Circuit guidance, this Court generally applies the Third Circuit's "*Girsh* factors" in deciding whether FLSA collective settlements are "fair and reasonable."  *See*, *e.g.*, *Altnor*, 197 F. Supp. 3d at 764.  Here, the *Girsh* factors favor approval:

*Girsh Factor 1 – Complexity, Expense and Likely Duration of the Litigation*:  This factor favors approval because, absent settlement, this litigation would entail a series of complex litigation events, including, but not limited to, resolving Defendant's anticipated decertification and summary judgment motions and, if summary judgment were denied, pretrial motions addressing the proper scope of "representative" evidence and an extensive trial.

*Girsh Factor 2 – Reaction of the Class to the Settlement*:  Plaintiffs' counsel already informed each Plaintiff of the settlement and have not received any unfavorable feedback. Moreover, we expect all or almost all Plaintiffs confirm their agreement with the settlement in the coming days by returning the Release Forms, which were mailed to each Plaintiff on September 28, 2021 and will be filed with the Court.

*Girsh Factor 3 – Stage of the Proceedings and Amount of Discovery Completed*:  This factor – which addresses "whether counsel had an adequate appreciation of the merits of the case before negotiating," *see In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) – favors

approval.  Here, settlement is the result of arms-length bargaining overseen by the Court and conducted after significant discovery and analysis.  *See* pp. 2-3 *supra*.

> *Girsh Factors 4 and 5 – Risk of Establishing Liability and Proving Damages*:  These factors "examine what the potential rewards (or downside) of the litigation had class counsel elected to litigate the claims rather than settle them."  *In re GMC Pick-Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 814 (3d Cir. 1995).  As previously discussed, continued litigation would pose significant risk that Plaintiffs might recover nothing or less than the value of the settlement.  *See* pp. 6-7 *supra*.  As such, these factors favor settlement.

> *Girsh Factor 6 – Risks of Maintaining the Class Through Trial*:  This factor is neutral. As indicated at pages 7-8 *supra*, Plaintiffs submit – as they must – that second stage certification of the FLSA collective is warranted.  As such, they cannot honestly assert that there is a significant risk "of maintaining the [collective] through trial.  *See Altnor*, 197 F. Supp. 3d at 762 (explaining that this factor "deserves only minimal consideration").[8]

> *Girsh Factor 7 – Ability of Defendant to Withstand a Greater Judgment*:  This factor is neutral where, as here, the risk of non-payment did not factor into Plaintiffs' counsel's settlement analysis.  *See In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 440 (3d Cir. 2016).

> *Girsh Factors 8-9 – The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation*:  These factors "test two sides of the same coin:  reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial."  *In re: Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004).  The question is whether, in light of these risks, the

---

[8]  Notably, the recent amendments to Civil Rule 23's settlement approval provisions do not include this *Girsh* factor among the considerations to be considered in reviewing the fairness of class action settlements.  *See* Fed. R. Civ. P. 23(e)(2).

settlement class is getting "good value." *Id.*

Here, Plaintiffs are getting an excellent value. As discussed at pages 6-7 *supra*, continued litigation poses a risk that Plaintiffs might recover nothing or less than the value of the settlement. Viewed against these significant litigation risks, the settlement – which generates average gross payouts of $11,500 per Plaintiff and $125 per week – achieves an excellent result.

<u>*Summary of the Girsh Factors*</u>: To sum up*,* seven of the nine *Girsh* factors favor approval of the settlement, and the remaining two factors are neutral.

### d. Approval of the Service Awards is Warranted.

Anderson and Williams each seek a $5,000 service award. *See* Agreement at ¶ 6. In class/collective litigation, such payments "compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011). Service awards

> are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers. . . . Although this Court has no reason to believe that [the defendant] has or will take retaliatory action towards either [Plaintiff] or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-188 (W.D.N.Y. 2005) (internal citations omitted); *accord Myers v. Jani-King of Philadelphia, Inc.*, 2019 WL 4034736, 2019 U.S. Dist. LEXIS 144929, *26 (E.D. Pa. Aug. 26, 2019).

Here, the requested $5,000 service awards are warranted. At the outset of litigation, Anderson and Williams informed co-workers of their respective lawsuits, which led to several "early" opt-in forms being filed with the Court. In FLSA collective litigation, early opt-in

plaintiffs are extremely important because they enable plaintiffs' counsel to obtain the declarations necessary to support a conditional certification motion.

In addition, Anderson and Williams have been diligent advocates for themselves as well as their co-workers. Both have been in regular contact with the undersigned counsel throughout the litigation, providing valuable information both before and after the lawsuit was filed. Also, both Anderson and Williams attended the settlement conference.

Finally, the requested service awards compare favorably with awards approved by this Court in other wage and hour class/collective actions. *See*, *e.g.*, *Hall*, 2020 WL 1477688, 2020 U.S. Dist. LEXIS 52632, at *25-26 ($10,000); *Layer v. Trinity Health Corp.*, 2019 U.S. Dist. LEXIS 185211, *3 (E.D. Pa. Oct. 24, 2019) ($10,000); *Myers*, 2019 WL 4034736, at *25-26 ($10,000); *Arrington v. Optimum Healthcare IT, LLC*, 2018 WL 5631625, 2018 U.S. Dist. LEXIS 186192, *25-26 (E.D. Pa. Oct. 31, 2018) ($7,500); *Galt*, 310 F. Supp. 3d at 496; *Devlin v. Ferrandino & Son, Inc.*, 2016 WL 7178338, 2016 U.S. Dist. LEXIS 170823, *28-29 (E.D. Pa. Dec. 9, 2016) ($7,500); *Schaub v. Chesapeake & Delaware Brewing Holdings*, 2016 U.S. Dist. LEXIS 157203, *14-15 (E.D. Pa. Nov. 14, 2016) ($9,000); *Cikra v. Lami Products, LLC*, 2016 U.S. Dist. LEXIS 156798, *4-5 (E.D. Pa. Nov. 10, 2016) ($12,500).

### e. Approval of the Attorney's Fees/Expenses is Warranted.

Finally, courts reviewing FLSA settlements must ensure that the attorney's fees and expenses paid to plaintiffs' counsel are reasonable. *See*, *e.g.*, *Howard*, 197 F. Supp. 3d at 780-82; *Kraus*, 155 F. Supp. 3d at 533-34. Here, the settlement contemplates a payment to Winebrake & Santillo, LLC ("W&S") of $169,000 for all attorney's fees and expenses. *See* Agreement at ¶ 6. After reducing this amount by $1,420 in expenses, *see* Declaration of Peter Winebrake ("Winebrake Dcl.") at ¶ 25, we are left with a **$167,580** attorney's fee, which

constitutes **28.65%** of the $585,000 settlement fund.

This Court has observed that attorney's fees paid in FLSA collective settlements must be approved for fairness pursuant to the "percentage-of-recovery method" and the Third Circuit's *Gunter* factors.  *See*, *e.g.*, *Howard*, 197 F. Supp. 3d at 780-82; *Kraus*, 155 F. Supp. 3d at 533-34. The percentage-of-recovery method is favored "because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure."  *In re Rite Aid Corp. Securities Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

Here, as is discussed below, the *Gunter* "percentage of the fund" factors (some of which overlap with the previously discussed *Girsh* factors) weigh in favor of approving the requested $167,580 attorney's fee:

*Gunter Factor 1 – Size of the Fund Created and the Number of Persons Benefited*:  This factor favors approval because, as already discussed, the settlement enables Plaintiffs to recover significant unpaid overtime wages.  *See* pp. 4-5 *supra*.

*Gunter Factor 2 – Presence or Absence of Substantial Objections by Members of the Class*:  As noted earlier, W&S is in the process of collecting Release Forms from the Plaintiffs. We expect to have Release Forms from all or almost all of the Plaintiffs in the coming weeks. These forms explicitly disclose that W&S seeks $169,000 in fees and expenses.  *See* Agreement at Ex. B.  As such, the completed forms will demonstrate Plaintiffs' general agreement with the fee payment.

*Gunter Factor 3 – Skill and Efficiency of the Attorneys Involved*:  This factor favors approval because W&S has extensive experience litigating cases under the FLSA and other wage statutes.  *See generally* Winebrake Dcl. at ¶¶ 3-19.

*Gunter Factor 4 – Complexity and Duration of the Litigation*:  This factor favors

approval because, as already discussed, this litigation involves hotly contested legal issues requiring significant analysis.  *See* pp. 6-7 *supra*.

*Gunter Factor 5 – Risk of Nonpayment*:  This factor favors approval because W&S *exclusively* works on a pure contingency fee basis, *see* Winebrake Dcl. at ¶ 3, making non-payment a real risk in every case the firm handles case, *see In re Lucent Technologies, Inc.*, 327 F. Supp. 2d 426, 438 (D.N.J. 2004).

*Gunter Factor 6 – Amount of Time Devoted to the Case*:  This factor favors approval because W&S has dedicated over 169 hours to this litigation.  *See* Winebrake Dcl. at ¶ 24.

*Gunter Factor 7 – Awards in Similar Cases*:  This factor favors approval.  "[F]ee awards for common fund cases generally range from 20-45% of the fund."  *Howard*, 197 F. Supp. 3d at 782; *accord Altnor*, 197 F. Supp. 3d at 766; *Kraus*, 155 F. Supp. 3d at 534; *see also Fein v. Ditech Financial, LLC*, 2017 WL 4284116, 2017 U.S. Dist. LEXIS 158479, *34 (E.D. Pa. Sept. 27, 2017) (characterizing 33% fee award as "benchmark" and "middle-of-the-road,"); *Creed v. Benco Dental Supply Co.*, 2013 WL 5276109, 2013 U.S. Dist. LEXIS 132911, *17 (M.D. Pa. Sept. 17, 2013) (33% fee awards are "consistent with similar settlements throughout the Third Circuit").  Thus, W&S's requested 28.65% fee falls well within the mainstream.

*Summary of the Gunter Factors*:  In sum, the *Gunter* factors favor approval of the requested attorney's fee.

*The Lodestar Crosscheck*:  Finally, some judges reviewing an attorney's fee perform a "lodestar crosscheck" of the proposed fee award.  When performed, however, the cross-check "need entail neither mathematical precision nor bean-counting."  *In re Rite Aid Corp. Securities Litig.*, 396 F.3d 294, 306 (3d Cir. 2005).  Lodestar "'multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'"  *Mejia v. KVK-*

*Tech, Inc.*, 2020 WL 5292074, 2020 U.S. Dist. LEXIS 162235, \*13 (E.D. Pa. Sept. 4, 2020)

(quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d

Cir. 1998)); *accord Stevens v. SEI Investments Co.*, 2020 WL 996418, 2020 U.S. Dist. LEXIS

35471, \*39 (E.D. Pa. Feb. 28, 2020) (citing cases).

      Here, utilizing the hourly rates described in the Philadelphia Community Legal Services

fees schedule, *see* Winebrake Dcl. at ¶ 21, W&S's fee lodestar stands at $92,255.50, *see id.* at ¶

24, which results in a lodestar "multiplier" of only **1.82** ($167,580 *divided by* $92,255.50).  This

multiplier falls well within the mainstream.

### C.  CONCLUSION

      For all the above reasons, Plaintiffs ask the Court to grant this motion and approve the

settlement of this action.

 Date:  September 30, 2021                                   Respectfully,


Peter Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
Michelle L. Tolodziecki
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

*For Plaintiffs*

16

# Exhibit A

Case 2:21-cv-00691-RAL   Document 30-3   Filed 09/30/21   Page 20 of 25

# Case Worker / Investigator - Adult Protective Services

**PA - Philadelphia (center city)**

**Apply      View All Jobs**

**Share This Job**

## Job Description

Health and human services professionals are encouraged to consider an outstanding career opportunity with Liberty Healthcare Corporation.

A full-time "Investigator / Case Worker" position is currently available with Liberty Healthcare and the Pennsylvania Department of Human Services Adult Protective Services Program.

Your typical workday in this role will involve traveling to residences, nursing homes and long-term care facilities throughout the region - and conducting investigations of allegations of abuse, neglect, abandonment and/or exploitation of adults who have disabilities. You will document your findings, develop care plans, and manage approximately 20 active cases.

This position comes with a high degree of autonomy and a flexible work schedule which includes occasional evening hours. Since this position requires regional travel, you must have your own vehicle. Work-related mileage and toll expenses are reimbursed.

You can expect a competitive salary, commensurate with your educational background and relevant professional experience. A comprehensive benefits package is also available – (http://www.libertyhealthcare.com/upload/138.pdf)click here for details (http://www.libertyhealthcare.com/upload/138.pdf).

## Skills & Requirements

You are a good fit for this position if you have a Bachelor's degree and experience in one of these areas:

- Field-based health or human services

- Service Coordinator or Supports Coordinator

- Law enforcement

- Case management or protective services

- Intellectual and developmental disabilities or behavioral health professional

Knowledge of Social Assistance Management Systems (SAMS) and Home and Community Service Information Systems (HCSIS) is helpful - and Spanish speaking skills are a plus.

Liberty Healthcare Corporation provides a wide array of health and human services to people throughout the United States. We are an equal opportunity employer and diverse organization which actively seeks veterans, people who have disabilities, and individuals of all backgrounds to join our growing organization.  Click here to learn more about us (http://www.libertyhealthcare.com/).

Click here to learn more about Pennsylvania's adult protective services program and ACT 70 (http://www.dhs.pa.gov /citizens/reportabuse/dhsadultprotectiveservices/)

Case 2:21-cv-00691-RAL   Document 30-3   Filed 09/30/21   Page 21 of 25

# Case Worker / Investigator - Adult Protective Services

**PA - Upper Darby**

**Apply     View All Jobs**

**Share This Job**

## Job Description

Health and human services professionals are encouraged to consider an outstanding career opportunity with Liberty Healthcare Corporation.

A full-time "Investigator / Case Worker" position is currently available with Liberty Healthcare and the Pennsylvania Department of Human Services Adult Protective Services Program.

Your typical workday in this role will involve traveling to residences, nursing homes and long-term care facilities throughout the region - and conducting investigations of allegations of abuse, neglect, abandonment and/or exploitation of adults who have disabilities. You will document your findings, develop care plans, and manage approximately 20 active cases.

This position comes with a high degree of autonomy and a flexible work schedule which includes occasional evening hours. Since this position requires regional travel, you must have your own vehicle. Work-related mileage and toll expenses are reimbursed.

You can expect a competitive salary, commensurate with your educational background and relevant professional experience. A comprehensive benefits package is also available – (http://www.libertyhealthcare.com/upload/138.pdf)click here for details (http://www.libertyhealthcare.com/upload/138.pdf).

## Skills & Requirements

You are a good fit for this position if you have a Bachelor's degree and experience in one of these areas:

- Field-based health or human services

- Service Coordinator or Supports Coordinator

- Law enforcement

- Case management or protective services

- Intellectual and developmental disabilities or behavioral health professional

Knowledge of Social Assistance Management Systems (SAMS) and Home and Community Service Information Systems (HCSIS) is helpful - and Spanish speaking skills are a plus.

Liberty Healthcare Corporation provides a wide array of health and human services to people throughout the United States. We are an equal opportunity employer and diverse organization which actively seeks veterans, people who have disabilities, and individuals of all backgrounds to join our growing organization.  Click here to learn more about us (http://www.libertyhealthcare.com/).

Click here to learn more about Pennsylvania's adult protective services program and ACT 70 (http://www.dhs.pa.gov /citizens/reportabuse/dhsadultprotectiveservices/)

Case 2:21-cv-00691-RAL   Document 30-3   Filed 09/30/21   Page 22 of 25

# Case Worker / Investigator - Adult Protective Services

**PA - Pittsburgh (Central)**

**Apply**      **View All Jobs**

## Share This Job

## Job Description

Health and human services professionals are encouraged to consider an outstanding career opportunity with Liberty Healthcare Corporation.

A full-time "Investigator / Case Worker" position is currently available with Liberty Healthcare and the Pennsylvania Department of Human Services Adult Protective Services Program.

Your typical workday in this role will involve traveling to residences, nursing homes and long-term care facilities throughout the region - and conducting investigations of allegations of abuse, neglect, abandonment and/or exploitation of adults who have disabilities. You will document your findings, develop care plans, and manage approximately 20 active cases.

This position comes with a high degree of autonomy and a flexible work schedule which includes occasional evening hours. Since this position requires regional travel, you must have your own vehicle. Work-related mileage and toll expenses are reimbursed.

You can expect a competitive salary, commensurate with your educational background and relevant professional experience. A comprehensive benefits package is also available – (http://www.libertyhealthcare.com/upload/138.pdf)click here for details (http://www.libertyhealthcare.com/upload/138.pdf).

## Skills & Requirements

You are a good fit for this position if you have a Bachelor's degree and experience in one of these areas:

- Field-based health or human services

- Service Coordinator or Supports Coordinator

- Law enforcement

- Case management or protective services

- Intellectual and developmental disabilities or behavioral health professional

Knowledge of Social Assistance Management Systems (SAMS) and Home and Community Service Information Systems (HCSIS) is helpful - and Spanish speaking skills are a plus.

Liberty Healthcare Corporation provides a wide array of health and human services to people throughout the United States. We are an equal opportunity employer and diverse organization which actively seeks veterans, people who have disabilities, and individuals of all backgrounds to join our growing organization. Click here to learn more about us (http://www.libertyhealthcare.com/).

Click here to learn more about Pennsylvania's adult protective services program and ACT 70 (http://www.dhs.pa.gov /citizens/reportabuse/dhsadultprotectiveservices/)

# Case Worker / Investigator - Adult Protective Services

**PA - Harrisburg**

**Apply**      **View All Jobs**

## Share This Job

## Job Description

Health and human services professionals are encouraged to consider an outstanding career opportunity with Liberty Healthcare Corporation.

A full-time "Investigator / Case Worker" position is currently available with Liberty Healthcare and the Pennsylvania Department of Human Services Adult Protective Services Program.

Your typical workday in this role will involve traveling to residences, nursing homes and long-term care facilities throughout the region - and conducting investigations of allegations of abuse, neglect, abandonment and/or exploitation of adults who have disabilities. You will document your findings, develop care plans, and manage approximately 20 active cases.

This position comes with a high degree of autonomy and a flexible work schedule which includes occasional evening hours. Since this position requires regional travel, you must have your own vehicle. Work-related mileage and toll expenses are reimbursed.

You can expect a competitive salary, commensurate with your educational background and relevant professional experience. A comprehensive benefits package is also available – (http://www.libertyhealthcare.com/upload/138.pdf)click here for details (http://www.libertyhealthcare.com/upload/138.pdf).

## Skills & Requirements

You are a good fit for this position if you have a Bachelor's degree and experience in one of these areas:

- Field-based health or human services

- Service Coordinator or Supports Coordinator

- Law enforcement

- Case management or protective services

- Intellectual and developmental disabilities or behavioral health professional

Knowledge of Social Assistance Management Systems (SAMS) and Home and Community Service Information Systems (HCSIS) is helpful - and Spanish speaking skills are a plus.

Liberty Healthcare Corporation provides a wide array of health and human services to people throughout the United States. We are an equal opportunity employer and diverse organization which actively seeks veterans, people who have disabilities, and individuals of all backgrounds to join our growing organization. Click here to learn more about us (http://www.libertyhealthcare.com/).

Click here to learn more about Pennsylvania's adult protective services program and ACT 70 (http://www.dhs.pa.gov/citizens/reportabuse/dhsadultprotectiveservices/)

Case 2:21-cv-00691-RAL   Document 30-3   Filed 09/30/21   Page 24 of 25

# Case Worker / Investigator - Adult Protective Services

**PA - Norristown**

- - -

**Apply**     **View All Jobs**

- - -

**Share This Job**

- - -

## Job Description

- - -

Health and human services professionals are encouraged to consider an outstanding career opportunity with Liberty Healthcare Corporation.

A full-time "Investigator / Case Worker" position is currently available with Liberty Healthcare and the Pennsylvania Department of Human Services Adult Protective Services Program.

Your typical workday in this role will involve traveling to residences, nursing homes and long-term care facilities throughout the region - and conducting investigations of allegations of abuse, neglect, abandonment and/or exploitation of adults who have disabilities. You will document your findings, develop care plans, and manage approximately 20 active cases.

This position comes with a high degree of autonomy and a flexible work schedule which includes occasional evening hours. Since this position requires regional travel, you must have your own vehicle. Work-related mileage and toll expenses are reimbursed.

You can expect a competitive salary, commensurate with your educational background and relevant professional experience. A comprehensive benefits package is also available –   (http://www.libertyhealthcare.com/upload /138.pdf)click here for details (http://www.libertyhealthcare.com/upload/138.pdf).

## Skills & Requirements

- - -

You are a good fit for this position if you have a Bachelor's degree and experience in one of these areas:

- Field-based health or human services

- Service Coordinator or Supports Coordinator

- Law enforcement

- Case management or protective services

- Intellectual and developmental disabilities or behavioral health professional

Knowledge of Social Assistance Management Systems (SAMS) and Home and Community Service Information Systems (HCSIS) is helpful - and Spanish speaking skills are a plus.

Liberty Healthcare Corporation provides a wide array of health and human services to people throughout the United States. We are an equal opportunity employer and diverse organization which actively seeks veterans, people who have disabilities, and individuals of all backgrounds to join our growing organization.  Click here to learn more about us (http://www.libertyhealthcare.com/).

Click here to learn more about Pennsylvania's adult protective services program and ACT 70 (http://www.dhs.pa.gov /citizens/reportabuse/dhsadultprotectiveservices/)

# Case Worker / Investigator - Adult Protective Services

**PA - Downingtown**

**Apply**     **View All Jobs**

## Share This Job

## Job Description

Health and human services professionals are encouraged to consider an outstanding career opportunity with Liberty Healthcare Corporation.

A full-time "Investigator / Case Worker" position is currently available with Liberty Healthcare and the Pennsylvania Department of Human Services Adult Protective Services Program.

Your typical workday in this role will involve traveling to residences, nursing homes and long-term care facilities throughout the region - and conducting investigations of allegations of abuse, neglect, abandonment and/or exploitation of adults who have disabilities. You will document your findings, develop care plans, and manage approximately 20 active cases.

This position comes with a high degree of autonomy and a flexible work schedule which includes occasional evening hours. Since this position requires regional travel, you must have your own vehicle. Work-related mileage and toll expenses are reimbursed.

You can expect a competitive salary, commensurate with your educational background and relevant professional experience. A comprehensive benefits package is also available –   (http://www.libertyhealthcare.com/upload /138.pdf)click here for details (http://www.libertyhealthcare.com/upload/138.pdf).

## Skills & Requirements

You are a good fit for this position if you have a Bachelor's degree and experience in one of these areas:

- Field-based health or human services

- Service Coordinator or Supports Coordinator

- Law enforcement

- Case management or protective services

- Intellectual and developmental disabilities or behavioral health professional

Knowledge of Social Assistance Management Systems (SAMS) and Home and Community Service Information Systems (HCSIS) is helpful - and Spanish speaking skills are a plus.

Liberty Healthcare Corporation provides a wide array of health and human services to people throughout the United States. We are an equal opportunity employer and diverse organization which actively seeks veterans, people who have disabilities, and individuals of all backgrounds to join our growing organization.  Click here to learn more about us (http://www.libertyhealthcare.com/).

Click here to learn more about Pennsylvania's adult protective services program and ACT 70 (http://www.dhs.pa.gov /citizens/reportabuse/dhsadultprotectiveservices/)